IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| DOYLE D. VAN BUREN, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 130218N |
| | ) | |
| v. | ) | |
| | ) | |
| LANE COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION** |

The court entered its Decision in the above-entitled matter on November 20, 2013. The court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days after its Decision was entered. The court's Final Decision incorporates its Decision without change.

Plaintiff appeals the real market value of property identified as Account 1192663 (subject property) for the 2012-13 tax year. A trial was held by telephone on October 14, 2013. Plaintiff appeared and testified on his own behalf. Bryce Krehbiel (Krehbiel), Property Appraiser 3, appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1 through 9 and Defendant's Exhibits A through J were received without objection.

I. STATEMENT OF FACTS

Krehbiel testified that the subject property is a single-family home located in a "desirable" albeit "eclectic" "class B" neighborhood in the "Eugene south hills." (*See* Def's Ex B.) He testified that the subject property is a "class 4+" home built in 1978 with an effective age that is the same as the year built. (*Id.*) Krehbiel testified that the subject property includes 2,330 square feet of finished living area, 506 square feet of basement, and a garage. (*Id.*) He testified that the subject property lot is sloped, but that is typical of properties in the "Eugene south hills."

Plaintiff testified that he considered listing the subject property for sale in "mid-2012," but he spoke with a real estate agent who told him that a sale of the subject property in its condition as of mid-2012 was not feasible. Plaintiff testified that the real estate agent told him that the market for the subject property was very limited and estimated that Plaintiff could receive a price in the "low $200,000" range for the subject property at that time. Plaintiff testified that he could not have received $300,000 without making repairs to the subject property.

Plaintiff testified that he gathered cost estimates for some, but not all, of the subject property's necessary repairs and replacements. (Ptf's Exs 1-9.) He testified that the cost estimates total approximately $114,000. (*See id.*) Plaintiff testified regarding each of the cost estimates that he provided.

Plaintiff testified that the subject property's "grounds" are overgrown. He testified that he was told, verbally, that it would cost $40,000 to clean up and landscape the subject property's yard, although the written estimate he provided was for $6,352 with "additional options" such as bark, accent boulders, irrigation, and plants totaling $8,000. (Ptf's Ex 8.) Plaintiff testified that the subject property is not currently irrigated, but other yards on the subject property's block are irrigated. Plaintiff testified that the subject property's driveway is in disrepair because a tree root is breaking through it. He provided an estimate from "Angell Flight Asphalt & Seal Coating, Inc" for $1,750 to repair the driveway. (Ptf's Ex 5.)

Plaintiff testified that the subject property's heating system is over 20 years old and is electric, which is less desirable than gas. He provided an estimate for "Automatic Heat" for "Service & Installation" totaling $13,383. (Ptf's Ex 1.) Plaintiff testified that the subject property's heating system has not "failed," although it provides "very expensive heat." Plaintiff and Krehbiel agreed that the subject property's windows are "clouding," although none are

broken. Plaintiff provided an estimate from "Jones Window & Door" for new windows and doors for the subject property with a "list price" based on "the prices Marvin [windows] suggests" of a $33,516 and a "total project installed price" of $20,877. (Ptf's Ex 2 at 1, 9.) Plaintiff provided an estimate for roof replacement totaling $3,277 with an additional $1,600 for "installation of gutters and downspouts[.]" (Ptf's Ex 4.) Plaintiff testified that the subject property roof is leaking and the deck is "spongy."

Plaintiff testified that the subject property's bathroom fixtures are "harvest gold" and its sinks and toilets are yellow. He testified that there is dry rot in the subject property's bathrooms, although the bathrooms are useable. Plaintiff provided an estimate from Sears for "bath renovations" totaling $27,862.01. (Ptf's Ex 3.) The estimate is not itemized, but Plaintiff testified that it included renovation of the subject property's three bathrooms, including installation of higher efficiency sinks, installation of toilets and new fixtures, and dry rot repair.

Plaintiff testified that the subject property's oven and dishwasher do not work. He provided estimates for new kitchen appliances, including a new range for $3,249.50 plus $350 for installation; a new microwave oven for $900; and a new dishwasher for $1,199 plus $120 for installation. (Ptf's Ex 6.) Plaintiff testified that the subject property's paint is cracking and some bare wood is exposed. He provided an estimate for $5,300 to repaint the subject property with an "additional $2,300 to replace gutters on home and garage." (Ptf's Ex 7.) Plaintiff testified that the subject property's carpet was installed in 1979 or 1980 and is three different colors. He provided an estimate from "Dalton Carpet" for $14,000. (Ptf's Ex 9.)

Krehbiel testified that the subject property received an adjudicated real market value for the 2003-04 tax year following an appeal to the board of property tax appeals (board). (*See* Def's Ex A.) He testified that the subject property's 2003-04 real market value was reduced by

about $40,000. Krehbiel testified that the 2003-04 adjudicated value was removed in 2009. (*Id.*) He testified that the subject property's 2008-09 and 2012-13 real market values were appealed to the board, but the board did not reduce those real market values. (*Id.*) Krehbiel testified that, in each appeal, the reason provided for the appeal was the subject property's "condition."

Krehbiel testified that he agrees that the subject property is suffering from some "neglect," but does not agree that it has deferred maintenance. He testified that Defendant applied a 17 percent depreciation factor to the subject property dwelling for the 2012-13 tax year. (Def's Ex B.) Krehbiel provided an exhibit entitled "Guide to Common Physical Depreciation Items 1992-93." (Def's Ex E.) He testified that the guide, provided by the Department of Revenue, states in percentages how rehabilitation or repair of various aspects of a property affect overall depreciation. Krehbiel testified that if the depreciation applied to the subject property for the 2012-13 tax year was decreased to five percent, the improvements' real market value would increase from $207,741 to $231,897. (Def's Exs A, C.) He testified that if the depreciation was decreased to two percent, the improvements value would increase to $238,497. (Def's Ex D.) Krehbiel testified that he provided those hypothetical adjustments to the subject property's depreciation to show that, even if the all of the subject property's repairs were made, the real market value of the subject property would increase only by about $30,000.

Krehbiel testified that in his view, many of the estimates provided by Plaintiff are for "upgrades" that would "modernize" the subject property rather than for repairs that would restore the subject property to its former condition. He testified that many of the subject property repairs could be made for less than the amounts stated in Plaintiff's estimates. (*See* Def's Exs F, G (window prices).)

/ / /

The subject property's 2012-13 tax roll real market value was $275,020 and its 2012-13 maximum assessed value was $238,604. (Ptf's Compl at 2.) Plaintiff requests a 2012-13 real market value of $217,279 for the subject property. (*Id.* at 1.) Plaintiff testified that his requested 2012-13 real market value of $217,279 was based on "calculations" he made in 2012. He testified that in essence, he subtracted the estimated cost of repairs from the subject property's 2012-13 tax roll real market value to reach his opinion of the subject property's correct 2012-13 real market value. Plaintiff testified that based on the total of the cost estimates he gathered for this appeal, the subject property's real market value is probably less than $217,279. Defendant requests that the 2012-13 real market value be sustained. (Def's Ans at 1.)

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2012-13 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citations omitted). Real market value is defined in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."[1]

The assessment date for the 2012-13 tax year was January 1, 2012. ORS 308.007; ORS 308.210.

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). The three approaches of value that must be considered are: (1) the cost approach; (2) the sales comparison

/ / /

---

[1] All references to the Oregon Revised Statutes (ORS) are to 2011.

approach; and (3) the income approach. OAR 150-308.205-(A)(2)(a). Although all three approaches must be considered, all three approaches may not be applicable in a given case. *Id.*

Plaintiff has the burden of proof and must establish his case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.,* 18 OTR 324, 332 (2005) (citing *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002)). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Plaintiff did not use any of the three approaches of value recognized by OAR 150-308.205-(A)(2)(a). Plaintiff testified that his requested 2012-13 real market value is based on the subject property's 2012-13 tax roll real market value less the estimated cost of repairs that he considered necessary as of mid-2012. Plaintiff's presentation at trial focused on aspects of the subject property that he determined should be repaired or replaced. Plaintiff presented no evidence of the subject property's condition as of January 1, 2012, other than his testimony regarding those aspects of the subject property that should be repaired or replaced.

Plaintiff provided numerous estimates for the replacement of various elements of the subject property, but he did not provide any evidence that those replacements were necessary. For example, Plaintiff testified that the subject property's roof leaks and he provided an estimate to replace the subject property's roof. However, he did not provide evidence that replacement of

the subject property's roof was necessary, nor did he provide an estimate to repair, rather than replace, the roof. Some of Plaintiff's cost estimates are duplicative. For instance, Plaintiff's painting estimate identifies a cost of $2,600 to "replace gutters" and Plaintiff's roof replacement estimate identifies a cost of $1,600 to install gutters and downspouts. (Ptf's Exs 4, 7.) Other cost estimates, such as that for the "bathroom renovation," are not itemized so it is unclear what is included. (Ptf's Ex 3.)

Even if the court was persuaded that all of the repairs and replacements identified by Plaintiff were necessary as of January 1, 2012, the court would not be able to determine the subject property's real market value as of January 1, 2012, because Plaintiff provided no evidence of the subject property's real market value either before or after repairs and replacements. Plaintiff assumed the subject property's 2012-13 tax roll real market value reflects the subject property's real market value if all repairs were completed, but provided no evidence to support that assumption. By contrast, Krehbiel testified that the subject property's 2012-13 tax roll real market value was determined based on the subject property's effective year of 1978 and a depreciation factor of 17 percent. That suggests that the subject property's 2012-13 tax roll real market value reflects the subject property's condition as of January 1, 2012.

Plaintiff testified that he received a value estimate for the subject property in the "low $200,000" range from a real estate agent, but he declined to identify the real estate agent. Plaintiff testified that the real estate agent with whom he spoke wished to remain anonymous. Plaintiff did not provide any evidence supporting the real estate agent's reported opinion of the subject property's value as of mid-2012. Plaintiff did not provide a list or other evidence of the repairs that the real estate agent identified to improve the marketability of the subject property. Plaintiff testified that he does not have a recent appraisal of the subject property, although he

acknowledged that it might have been helpful to provide one. In his testimony, Plaintiff referred to the quality and features of other homes in the subject property's neighborhood, but did not provide any evidence of those other homes. Plaintiff's evidence is inconclusive and Plaintiff has failed to meet his burden of proof.

Even though the burden has not shifted under ORS 305.427, "the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. Defendant did not utilize any of the three approaches to value and did not present any evidence in support of the subject property's 2012-13 real market value. The court is unable to determine the subject property's 2012-13 real market value.

III.  CONCLUSION

After careful consideration, the court concludes that Plaintiff failed to meet his burden. The evidence presented is inconclusive and the court is unable to determine the 2012-13 real market value of the subject property. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of December 2013.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on December 9, 2013. The court filed and entered this document on December 9, 2013.*